1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FRIENDS OF THE RIVER,                    No.  2:16-cv-00818-DJC-JDP

12              Plaintiff,

13        v.                                  ORDER

14   NATIONAL MARINE FISHERIES
     SERVICE, et al.,
15
                Defendants.
16

17          This matter is before the Court on Plaintiff Friends of the River's motion to

18   partially lift the stay of this action.  (Pl's Mot. (ECF No. 111).)  Federal Defendants,

19   National Marine Fisheries Service ("the Service"), United States Army Corps of

20   Engineers ("the Corps"), Thomas P. Bostick, and Penny Pritzker, oppose this motion.

21   (Fed. Defs.' Opp'n (ECF No. 112).)  Defendant-Intervenor Yuba County Water Agency

22   also opposes the motion to lift stay and joins Federal Defendants' opposition.  (Def.

23   Yuba County Water Agency Opp'n (ECF No. 113).)

24          For the reasons set forth below, the Court will deny Plaintiff's Motion to Lift Stay.

25                              **BACKGROUND**

26          The Corps operates and maintains the Daguerre Point and Englebright Dams

27   on the Yuba River.  (First Amended Compl. (ECF No. 25) at 12.)  In 2014, the Service

28   issued a Biological Opinion and Letter of Concurrence regarding the Daguerre Point

and Englebright Dams.  (*Id.* at 26.)  The 2014 Biological Opinion found that the Corps'
activities at the Daguerre Dam were unlikely to jeopardize the survival or recovery of
three species of fish listed as threatened under the Endangered Species Act.  (*Id.*)
Similarly, the 2014 Letter of Concurrence concurred with the Corps' assessment that
its activities at the Englebright Dam were unlikely to adversely affect the listed species.
(*Id.*)

Plaintiff, Friends of the River, initially brought the present action in 2016,
challenging these decisions under the Administrative Procedure Act and the
Endangered Species Act.  (ECF No. 1)  On February 22, 2018, the Court denied
Plaintiff's motion for summary judgment and granted Defendants' motions for
summary judgment.  (ECF No. 62.)  Plaintiff appealed this decision.  (ECF No. 68.)

On review, the Ninth Circuit reversed the District Court's decision finding, as to
Plaintiff's Section 7 claims, that the 2014 Biological Opinion and Letter of Concurrence
were not arbitrary and capricious and remanded to the District Court "with directions
to remand to the Service to reassess its 2014 [Biological Opinion] and [Letter of
Concurrence] in light of this opinion."  *Friends of the River v. National Marine Fisheries
Service*, 786 Fed. Appx. 666, 669–70 (9th Cir. 2019).  The Ninth Circuit also reversed
and remanded "the district court's summary judgment in favor of the Corps on FOR's
Section 9 'take' claim" on the grounds that the District Court failed to address the
argument raised by Plaintiff.  *Id.* at 670.  The District Court's determination that the
Service and the Corps were not required to reinitiate consultation based on a
purported change of circumstance was affirmed.  *Id.* at 671.

Following the Ninth Circuit's ruling and remand, the District Court remanded to
the Service to reassess the 2014 Biological Opinion and Letter of Concurrence.  (ECF
No. 92.)  As requested by the Plaintiff, the Court stayed Plaintiff's Section 9 claims
during the remand period until the reassessment occurred.  (ECF No. 92; *see also* ECF
No. 85 ("[FOR] requests that the Court stay [the Section 9] claim until NMFS has
completed its reassessment of the 2014 [Biological Opinion] and [Letter of

Concurrence] and issued its reasoned explanation of the new biological opinion(s).")) As to the Section 7 claims, the Service was given the option to either "provide a more reasoned explanation of the 2014 Biological Opinion and Letter of Concurrence" or to reinitiate consultation with the Corps and subsequently issue a new Biological Opinion and Letter of Concurrence.  (*See* ECF No. 94.)  Federal Defendants elected to provide a more reasoned explanation as to the Englebright Dam (ECF No. 100 at 2) but to reinitiate consultation with the Corps and issue a new Biological Opinion as to Daguerre Point Dam (ECF No. 103 at 2).  The Court subsequently stayed the entirety of this action until the reinitiated consultation on the Daguerre Point Dam was complete and a new Biological Opinion could be issued.  (ECF No. 106.)

On May 28, 2022, Plaintiff filed the present Motion to Lift Stay.  Federal Defendants filed an opposition to the motion on June 13, 2022.  Defendant Yuba County Water Agency joined that opposition and filed a supplemental opposition to the motion on June 13, 2022.  Plaintiff filed a reply on June 22, 2022, and the motion was submitted without oral argument.  (ECF No. 117.)  This case was reassigned to the undersigned on April 4, 2023.  (ECF No. 123.)

**MOTION TO LIFT STAY**

**I.    Legal Standard**

The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  A court may enter a stay "pending resolution of independent proceedings which bear upon the case.... whether the separate proceedings are judicial, administrative, or arbitral in character," and granting the stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citations omitted) (citing *Kerotest Mfg. Co. v. C-O-Two Fire*

3

1  *Equip. Co.*, 342 U.S. 180 (1952)).  "The corollary to this power is the ability to lift a stay

2  previously imposed."  *Boyle v. Cty. of Kern*, No. 1:03-cv-05162-OWW-GSA, 2008 WL

3  220413, at *5 (E.D. Cal. Jan. 25, 2008); *see also Johnson v. JP Morgan Chase Bank*,

4  N.A., No. 5:17–cv–02477–JGB–SP, 2019 WL 2004140, at *2 (C.D. Cal. Jan. 25, 2019).

5       Three factors guide this Court's determination of whether a stay is appropriate:

6  "[1] the possible damage which may result from the granting of a stay, [2] the hardship

7  or inequity which a party may suffer in being required to go forward, and [3] the

8  orderly course of justice measured in terms of the simplifying or complicating of

9  issues, proof, and questions of which could be expected to result from a stay."  *CMAX*,

10  300 F.2d at 268.  A court must "balance the length of the stay against the strength of

11  the justification given for it."  *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). "If a

12  stay is especially long or its term is indefinite," a court should "require a greater

13  showing to justify it."  *Id.*

14  **II.    Analysis**

15       Plaintiff is seeking to partially lift the March 15, 2022 stay of this action so that

16  they may file a motion for preliminary injunction.[1]  (Pl's Mot. at 2.)  The parties disagree

17  as to whether a continuation of the current stay is warranted.

18         **A.  Harm to Plaintiff**

19       Plaintiff claims they are harmed by the continued stay as it prevents them "from

20  seeking relief urgently needed to avoid the irreparable harm to the Yuba's threatened

21  fish species that will occur in the next two or more years while Federal Defendants

22  consult." (Pl's Reply at 3.)  Plaintiff argues that the Ninth Circuit's ruling did not

23  prevent Plaintiff from seeking preliminary injunctive relief and thus the fact that they

24  are currently precluded from doing so causes harm.  (*Id.*)  Defendants assert that

---

[1] Plaintiff's motion specifically seeks to lift the March 15, 2022 stay of the entire action.  (Pl. Mot. at 2 ("Plaintiff Friends of the River ("FOR") hereby moves this Court for an order partially lifting the stay of this litigation (Dkt. 106)(Stay Order)…."))  Nothing in Plaintiff's motion suggests that they are requesting the Court's prior stay of Plaintiff's Section 9 claims (*see* ECF No. 92) be lifted.  Accordingly, though there are two stays in the present action, this order will only address Plaintiff's motion as a request to lift the March 15, 2022 stay (ECF No. 106).

Plaintiff cannot assert harm based on a prospective motion for preliminary injunction that is not yet before the Court.  (Fed. Defs.' Opp'n at 9.)

Though much of Plaintiff's argument focuses on the inability to seek preliminary relief itself as a harm, Plaintiff also suggests that "irreparable harm to the Listed Species" would occur without an injunction.  Though the Motion to Lift Stay contains very little information about this alleged harm  (see Pl's Mot), the proposed Motion for Preliminary Injunction, which Plaintiff included with the present motion, contains a more robust explanation of the harm Plaintiff asserts will occur if the stay remains.[2] (ECF No. 111-5 at 26-28.)

In the proposed Motion for Preliminary Injunction, Plaintiff claims that "Listed Species" are suffering irreparable harm while Defendants perform their reassessment. (Id. at 26.)  In particular, Plaintiff notes seven specific alleged harms: (1) The Englebright Dam causes harm by preventing accessing the "Upper Yuba habitat", thus increasing inbreeding of the Chinook and steelhead populations; (2) The lack of access for Chinook and steelhead populations also prevents them from being able to take refuge in upstream tributaries "during catastrophic events in the Yuba [River]…"; (3)  The Englebright Dam "traps gravel needed to create a healthy spawning substrate" downstream. (4) The Englebright Dam "traps large woody material which would provide shade, refuge from predators, and flow velocity refuge needed for juvenile spring Chinook and steelhead rearing[;]" (5) The Daguerre Dam hampers Chinook and steelhead migration and spawning due to fish ladders that are inadequately designed and operated; (6) The Daguerre Dam reduces species

---

[2] The proposed motion is not presently before the Court as this action is stayed.  The Court is cognizant of the fact that parties have not had the opportunity to fully brief or present argument on the issues present in this motion.  However, the basis of Plaintiff's present motion is inherently linked with the harms claimed in Plaintiff's proposed preliminary injunction motion.  (See ECF No. 111 at 10 ("The stay causes FOR substantial hardship by precluding it from seeking relief urgently needed to avoid the irreparable harm to the Yuba's threatened fish species that will occur in the next two or more years[.]") As such, while it is premature for the Court to consider the injunction on the merits, and nothing in this Order should be interpreted as a decision as to whether Plaintiffs will ultimately be entitled to relief, the Court will consider whether the underlying claims of irreparable harm are sufficient to justify lifting the present stay.

1  abundance by "hampering spring Chinook and steelhead juveniles from successfully

2  migrating downstream and by promoting predation on these juveniles[;]" (7) The

3  Daguerre Dam blocks green sturgeon from spawning and rearing in the Yuba River

4  above the Dam.  (*Id.* at 26-27.)  Plaintiff claims that all of the above issues result in

5  "harm to the Listed Species in the form of death, physical injury, loss of genetic

6  distinctiveness, decreased productivity, loss of spatial diversity, and significant habitat

7  modification–resulting in significant impairment of essential breeding, feeding,

8  migration, and sheltering behaviors."  (*Id.* at 28.)

9      As an initial matter, this evidence is stale.  Notably, the above-alleged harms are

10  all based on the 2014 Biological Opinion, the 2014 Letter of Concurrence, and a

11  declaration prepared by an expert signed on May 9, 2017.  (*See* ECF No. 111-5 at 26-

12  28; *see also* ECF No. 34.)  This means the factual basis for the harm Plaintiff is claiming

13  is, at a minimum, over five years old at the time of this Court's review.[3]  In cases where

14  the 2014 Biological Opinion and Letter of Concurrence are relied on, the information

15  may be closer to nine or more years out of date.  Plaintiff themselves have previously

16  noted that "since 2014 there have been several changes in conditions and

17  circumstances on the Yuba River potentially affecting the Listed Species."  (ECF No. 85

18  at 6.)

19      Moreover, this action was initiated on April 20, 2016.  (*See* ECF No. 1.)  Plaintiff

20  did not file a motion seeking preliminary injunctive relief at any point from the time of

21  filing the original complaint to the Court's prior grant of summary judgment on

22  February 22, 2018 (ECF No. 62).  Even after this case was remanded to the District

23  Court by the Ninth Circuit on November 25, 2019, Plaintiff did not seek a preliminary

24  injunction from this Court until May 2022.  (*See* ECF Nos. 108, 111.)  While the Ninth

25  Circuit denied injunctive relief filed in that Court, Plaintiffs acknowledge that nothing

26

27  [3] The Court recognizes that the present motion was filed on May 28, 2022, almost a year prior to the
Court's present decision.  (*See* ECF No. 111.)  However, even at that time, the information Plaintiff relies
28  upon was many years old and likely outdated.

in the Ninth Circuit's decision prohibited them from seeking injunctive relief in this Court.  (Pl's Reply at 2.)

Plaintiff's choice to not previously seek preliminary injunctive relief from this Court undercuts Plaintiff's argument about the harm that will result if the stay remains. This is particularly true given that nothing in Plaintiff's motion or reply indicates that circumstances have changed such that Plaintiff now believes preliminary injunctive relief is necessary where it previously was not.  (*See* ECF Nos. 111, 118.)  Further, and as discussed above, in alleging these harms, Plaintiff relies upon information that they were aware of for many years prior to the present motion being filed.  (*See e.g.*, ECF No. 34.)  It is thus challenging to accept Plaintiff's claim that the alleged harm is concrete and significant enough to justify lifting the present stay with seemingly only a few months remaining before a new Biological Opinion is issued when Plaintiff's previous actions do not suggest this to be the case.

In light of the above, Plaintiff has failed to show the stay would cause harm if it were to remain in effect.

### B.  Hardship to Defendants

The Federal Defendants argue that lifting the stay would cause them substantial hardship as it would require Defendants to divert resources from completing the new Biological Opinion in order to respond to Plaintiff's motion.  (Fed. Defs.' Opp'n at 9.) In both the original motion and their reply, Plaintiff only briefly addresses the hardship Defendants might suffer were the stay lifted.  (Pl's Mot. at 10; Pl's Reply at 6–7.) Relying on *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), Plaintiff dismisses Defendants' claim of hardship suggesting that no hardship exists (Pl's Mot. at 10) and that Defendants' need to "divert[] staff…does not equate to the requisite 'clear case of hardship or inequity'" (Pl's Reply at 5–6 (citations omitted)

*Lockyer* is distinct from the present action.  In *Lockyer*, Ninth Circuit vacated a stay imposed by the district court pending the outcome of bankruptcy proceedings in Texas.  398 F.3d at 1100.  There, the district court stayed proceedings based "in

1 | substantial part" on erroneous legal determinations that it did not have the ability to

2 | determine the scope of an automatic stay and that the applicability of the "police or

3 | regulatory power" exception to the automatic stay under 11 U.S.C. § 362(b)(4).  398

4 | F.3d at 1105.  In addition to these legal errors, the Ninth Circuit noted that it was

5 | "highly doubtful" that the bankruptcy court proceedings would provide a legal

6 | resolution to the claims that were stayed in the district court.  *Id*. at 1112.[4]  In this case,

7 | the actions of the Federal Defendants will form the entire basis of the stayed action

8 | going forward.  Indeed, a stay was imposed so that Defendants could comply with

9 | orders in this case from the Ninth Circuit and the District Court.  (*See* ECF Nos. 74,

10 | 106.)  Thus, unlike *Lockyer*, the actions Defendants are undertaking during this stay

11 | will have a significant impact on the legal resolution of the Section 7 claims in this

12 | action.

13 |       Moreover, Defendants' argument is not that they would suffer hardship if

14 | required to defend this suit.  Instead, Defendants claim that lifting the stay would

15 | cause them substantial hardship as they are already engaged in complying with Court

16 | orders in this action and, if Plaintiff's motion were granted, they would be required to

17 | split resources between "completing the reinitiated Daguerre Point consultation and

18 | complying with the Ninth Circuit's remand order and…responding to [a preliminary

19 | injunction] motion." (Fed. Defs.' Opp'n at 9.)  The suggestion that this will place

20 | additional strain on Defendants and hamper their ability to quickly complete the new

21 | Biological Opinion is well founded.  *See S. Yuba River Citizens League v. Nat'l Marine*

22 | *Fisheries Serv.*, No. 2:13-cv-0042-MCE, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13,

23 | 2013) ("Forcing Defendants to proceed in the instant litigation, when it is already clear

24 | that the outcome of the [administrative proceedings] will impact the final resolution of

25 | this case, would be prejudicial." (citation omitted)).  If the stay in this action were lifted

26 |

27 | _____

  | [4] While *Lockyer* suggested the possibility of injunctive relief was a factor to be considered in

28 | determining the propriety of a stay, 398 F.3d at 1112, as discussed above Plaintiff's failure to seek such
  | relief for much of the duration of this case weighs against lifting the stay.

to allow for a motion for preliminary injunction, Defendants would be required to address that motion and simultaneously produce a new Biological Opinion that may substantially impact the resolution of this action.  This would be prejudicial to the Defendants and present a substantial hardship.  *Id.*

Accordingly, Defendants have shown that they will suffer hardship as a result of the stay in this action being lifted.  As discussed above, Plaintiff has not shown that they will suffer harm as a result of the stay remaining in place.  Thus, Defendants would suffer greater prejudice and hardship if the stay in this action were lifted.

### C. Judicial Time and Resources

The Court has a clear interest in keeping the current stay in place so as to conserve judicial resources.  Defendants are currently in the process of producing a new Biological Opinion in response to the Ninth Circuit's instructions on remand as well as this Court's orders.  (*See* Fed. Defs.' Opp'n at 4.)  The results of this undertaking will impact the Court's analysis of the Plaintiff's Section 7 claims, which are based in large part on the final agency action of the Federal Defendants.  (*See* First Am. Compl. (ECF No. 25) at ¶¶ 97, 101, 107, 112, 115.)  Regardless of whether the actions render the suit moot (see Pl's Reply at 9), the nature of the new Biological Opinion will, in large part, control whether Plaintiff is entitled to relief.

Plaintiff argues that the Federal Defendants have effectively already made their determinations in response to the Ninth Circuit's remand, such that a continued stay is no longer warranted.  (Pl's Motion at p. 6; Pl's Reply at 1 ("Federal Defendants have already decided to adhere to the 2014 BiOp's determination of the [U.S. Army Corps of Engineers'] discretionary authority over Daguerre. Thus, the reassessment of the Corps' discretionary authority over Daguerre that the Ninth Circuit remand order required is now done."))  However, even if the Service intends to use the same approach used in the 2014 Biological Opinion and does not consider the continued existence of the Dams and the associated operations of hydroelectric facilities and water diversions to be agency actions attributable to the Corps, the issue remains how

9

1   the Service justifies any change from its position prior to the 2014 Biological Opinion.

2   The Ninth Circuit did not reject the Service's determination as to what constitutes

3   agency action on the merits, but rather concluded the Service failed "to provide a

4   reasoned explanation for why it changed positions on whether the continued

5   existence of the dams and the hydroelectric facilities abutting Englebright constitute

6   agency action." *Friends of the River*, 786 Fed. Appx. at 669.  Thus, the Court is unable

7   to resolve Plaintiff's claims on the merits or assess the Federal Defendant's compliance

8   with the Ninth Circuit's mandate until the Service's consultation is complete and a

9   more reasoned explanation is provided.

10          The Federal Defendants have maintained a consistent expected timeline for

11   completion of the new assessment and Biological Opinion.  (*See* ECF No. 114 at 2;

12   ECF No. 119 at 3–4; ECF No. 120 at 3–4; ECF No. 122 at 4.)  As stated by the Federal

13   Defendants, the "final Biological Assessment" will be transmitted by the Corps to the

14   Service no later than April 2023 and a new Biological Opinion will be completed no

15   later than January 2024. (*See Id.*)  A roughly nine-month wait, from the date of this

16   order, is a relatively short delay that will potentially save significant judicial time and

17   resources.  Lifting the stay so that the Court may order briefing, hear argument, and

18   rule on motions that may soon be rendered moot by the new Biological Opinion does

19   not serve the orderly course of justice.[5]  *CMAX*, 300 F.2d at 268.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26   [5] The Court is cognizant that at the time this motion was filed, the expected delay occasioned by the
     stay would have been on the order of 20 months, and that the equities at that time may have been
     different.  The Court regrets the delay in resolving Plaintiff's motion that was caused by reassignment of
27   this action to two different judges, including the undersigned on April 4, 2023.  However, the Court
     must resolve the motion to lift the stay in the current context, which includes that the Federal
28   Defendants have indicated that they will complete the Biological Opinion in relatively short order.

**CONCLUSION**

Given the above, the Court finds that a continued stay is appropriate as Plaintiff has not shown a concrete harm in the stay remaining in effect for the next ten months as the Defendants complete their actions in compliance with the Ninth Circuit's mandates.  Conversely, the Defendants would suffer greater hardship and prejudice if the stay were lifted, and judicial time and resources would be conserved by maintaining the present stay.[6]

However, on re-examination of the *CMAX* factors above, the Court finds that the current indefinite length of the stay is not supported by the justifications given. *Yong*, 208 F.3d at 1119.  Accordingly, the Court will modify the current stay to terminate on February 29, 2024.  This aligns with Federal Defendants' current representations about their expected date of completion (*see* ECF No. 114 at 2; ECF No. 119 at 3–4; ECF No. 120 at 3–4; ECF No. 122 at 4) and places a clear limit on the duration of the stay.  If Defendants anticipate renewal will be required, they must notice any such request as a formal motion at least one month in advance of the expiration of the stay.

In accordance with the above and good cause appearing, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Lift Stay (ECF No. 111) is DENIED.

2. The current stay of this action, originally issued on March 15, 2022, is

---

[6] Defendant Yuba County Water Agency's opposition argues that Plaintiff's motion should be denied under a "change in circumstances" standard.  (Def. Yuba County Water Agency Opp'n at 2.)  Courts have inconsistently applied such a standard when reviewing motions for a stay to be lifted. *See e.g.*, *Digital Software Services, Inc. v. Entertainment Programs, Inc.*, No. 2:09-cv-02763-TLN-DAD, 2014 WL 5816929, at *3 (E.D. Cal. Nov. 7, 2014) (considering whether there was a change of circumstances to warrant lifting a stay); *see also Acoustic Technology, Inc. v. Silver Springs Networks, Inc.*, No. 17-cv-02176-SK, 2018 WL 11470959, at *2 (N.D. Cal. Feb. 27, 2018) (same); *but see St. Paul Fire and Marine Insurance Company v. Kinsale Insurance Company*, No. 1:20-cv-00967-JLT-CDB, 2023 WL 2466404, at *3-4 (E.D. Cal. Mar. 10, 2023) (reconsidering the factors for imposing a stay when considering a motion to lift a stay).  The Court has already found that Plaintiff's Motion to Lift Stay should be denied under a review of the *CMAX* factors.  However, to the extent a change of circumstances analysis would be more appropriate, Plaintiff's motion should also be denied as Plaintiff has not presented any change of circumstances that would justify lifting the present stay.  (*See* Pl's Mot.; Pl's Reply.)

11

modified to expire on February 29, 2024.  Any applications for renewal of this stay must be made by formal motion at least one month in advance of the expiration of the stay.


IT IS SO ORDERED.

Dated:   **May 3, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – FOR16cv00818.liftstay