**REMY MOOSE MANLEY, LLP**
HOWARD F. WILKINS III, SBN 203083
LAURA M. HARRIS, SBN 246064
LOUISA I. ROGERS, SBN 348350
555 Capitol Mall, Suite 800
Sacramento, California 95814
Telephone: (916) 443-2745
Facsimile: (916) 443-9017
Email: cwilkins@rmmenvirolaw.com
Email: lmiddleton@rmmenvirolaw.com
Email: lrogers@rmmenvirolaw.com

Attorneys for Defendant-Intervenor
YUBA COUNTY WATER AGENCY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF THE RIVER,<br><br>           Plaintiff,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>           Defendants,<br>_____<br>YUBA COUNTY WATER AGENCY,<br><br>           Defendant-Intervenor. | Case No. 2:16-CV-00818-DJC-JDP<br><br>**DEFENDANT-INTERVENOR YUBA COUNTY WATER AGENCY'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing<br>Date: October 2, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 7, 14th Floor |

**TABLE OF CONTENTS**

INTRODUCTION. ............................................................................................................... 5

ARGUMENT. ..................................................................................................................... 5

I.    YCWA has standing to join Federal Defendants' arguments. ........................................... 5

II.    The Corps lacks discretion on how it manages and maintains the Dams. ........................ 7

   A.    The Corps' management of the Dams is not a discretionary action. .......................... 7

   B.    Continued existence of the Dams is not an ongoing Agency Action. ......................... 8

   C.    YCWA did not waive the argument that the existence of the Dams does not
   constitute an agency action. ........................................................................................ 9

III.    The 2013 Englebright BA and LOC were not arbitrary and capricious. ......................... 9

IV.    The 2013 BA properly treated the gravel and LWM augmentation programs as part of
the environmental baseline. ............................................................................................. 10

V.    The Dams and related facilities do not constitute a single Agency Action. ..................... 10

VI.    The Corps has not made any affirmative, discretionary decisions about the Facilities'
licenses. ............................................................................................................................ 11

VII.    The Corps is not liable under ESA Section 9. ........................................................... 12

VIII.    YCWA accurately characterize the 2012 BiOp. ........................................................ 13

CONCLUSION. ................................................................................................................. 14

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

**TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*California ex re. State Water Resources Control Bd. v. F.E.R.C.*
   966 F.2d 1541 (9th Cir. 1992) .........................................................................................11, 12, 13

*Crossroads Grassroots Policy Strategies v. Federal Election Comm'n*
   788 F.3d 312 (D.C. Cir. 2015) ......................................................................................... 6

*Ctr. for Biological Diversity v. Brennan*
   571 F. Supp. 2d 1105 (N.D. Cal. 2007) .......................................................................... 6

*Center for Biological Diversity v. United States Bureau of Reclamation*
   2025 WL 1798970 (E.D. Cal. June 30, 2025)................................................................. 7, 8

*Dep't of Transp. v. Pub. Citizen*
   541 U.S. 752 (2004) ...................................................................................................... 12

*Diamond v. Charles*
   476 U.S. 54 (1986) ........................................................................................................ 6

*In re Doe v. United States*
   58 F.3d 494 (9th Cir. 1995) ........................................................................................... 9

*Institutional Shareholder Services, Inc. v. SEC*
   142 F.4th 757 (D.C. Cir. 2025) ...................................................................................... 6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*
   591 U.S. 657 (2020) ...................................................................................................... 6

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992) ...................................................................................................... 6

*Nat. Res. Def. Council v. Norton*
   236 F. Supp. 3d 1198 (E.D. Cal. 2017) ......................................................................... 13

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*
   551 U.S. 644 (2007) ...................................................................................................... 8

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

*Pac. Coast Fed'n of Fishermen's Ass'n v. Bureau of Reclamation*

226 Fed. Appx 715 (9th Cir. 2007) ................................................................ 10

*Pac. Rivers Council v. Thomas*

30 F.3d 1050 (9th Cir. 1994) ......................................................................... 8

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*

2013 WL 4094777 (E.D. Cal. Aug. 13, 2013) ............................................5, 13

*San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation Dist.*

49 F.4th 1242 (9th Cir. 2022) ........................................................................ 7

*Schwarz v. Folloder*

767 F.2d 125 (5th Cir. 1985) ......................................................................... 6

*Sierra Club v. Bureau of Land Mgmt.*

786 F.3d 1219 (9th Cir. 2015) ...................................................................... 11

*Tenn. Valley Auth. v. Hill*

437 U.S. 153 (1978) ...................................................................................... 9

*Town of Chester, N.Y. v. Laroe Estates, Inc.*

581 U.S. 433 (2017) ...................................................................................... 6

<u>Statutes</u>

5 U.S.C. § 704 ............................................................................................... 9

16 U.S.C. §§ 791-825r ................................................................................. 12

16 U.S.C. §§ 1531-1544 ................................................................................. 5

33 U.S.C. § 661 .............................................................................................. 7

33 U.S.C. §§ 2283(b)(1), 2309a(d) ................................................................. 7

33 U.S.C. §§ 2309a(d), 2330(d), 2283(b)(1) ................................................... 8

Pub. Law No. 99-662, § 1106, 100 Stat. 4082 ................................................ 7

<u>Regulations</u>

50 C.F.R. § 402.02 .....................................................................................8, 11

50 C.F.R. § 402.03 .......................................................................................... 8

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

**INTRODUCTION**

This Court has properly recognized that the continued existence and operation of the Englebright and Daguerre Point Dams form part of the environmental baseline and that the Corps lacks discretion to make the sweeping modifications Plaintiff seeks. *See* ECF No. 62; *See S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 2:13-CV-00042-MCE, 2013 WL 4094777, at *10-11 (E.D. Cal. Aug. 13, 2013) ("*SYRCL IV*"). Yet Plaintiff again urges the Court to treat the baseline as if it were a discretionary action. But Congress never conferred the authority Plaintiff assumes, and the Court should once more decline to read into the law powers Congress did not provide.

Plaintiff also challenges Yuba County Water Agency's ("YCWA's'") participation in this case on logically inconstant grounds, arguing, on one hand, that YCWA lacks standing for presenting arguments similar to those of Federal Defendants, and on the other, that YCWA waived issues by avoiding duplication. These positions cannot be reconciled. If YCWA amplifies and expands on Federal Defendants' arguments, it is faulted for redundancy; if it avoids duplication, it is accused of waiver. This catch-22 would deny YCWA a fair opportunity to defend its interests. Nothing in the Court's orders supports such a result.

Plaintiff's motion should be denied, and summary judgment entered for YCWA and Federal Defendants.[1]

**ARGUMENT**

**I.     YCWA has standing to join Federal Defendants' arguments.**

Plaintiff contends that YCWA lacks standing because, in Plaintiff's view, YCWA merely repeats Federal Defendants' arguments. ECF No. 185 at 2-4. As YCWA explained in

---

[1] YCWA hereby joins the Federal Defendants' Reply Memorandum in Support of Cross-Motion for Summary Judgment (Electronic Case File ["ECF"] No. 190), which it incorporates by reference as if fully set forth herein. As explained in YCWA's moving papers, while YCWA joins most of Federal Defendants' arguments and moves for summary judgment on all claims in Plaintiff's Second Amended Complaint, ECF No. 150, YCWA's joinder and motion should not be interpreted to imply that YCWA asserts or joins any argument that the 2024 Biological Opinion ("BiOp") for Daguerre Point Dam ("Daguerre") fully complies with Section 7 ("Section 7") of the Endangered Species Act ("ESA") (16 U.S.C. §§ 1531-1544).

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

opposing Plaintiff's motion to strike (ECF No. 180), its arguments are not duplicative. In any case, overlap is irrelevant. Article III standing turns on the nature of intervenor's interest and the relief they seek, not on uniqueness of its legal theories.[2]

An intervenor seeking the same relief as an existing party need not make a separate showing of Article III Standing. *E.g., Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (intervenor must possess Article III standing only when it seeks relief not requested by the parties); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (same). Here, both YCWA and Federal Defendants ask the Court to deny Plaintiff's motion and to grant summary judgment in their favor. *Compare* ECF No. 153 at 23 (Fed. Def. Answer) *with* ECF No. 154 at 24 (YCWA Answer). That shared objective is sufficient to support YCWA's participation. *See Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985) ("a dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits").[3]

In any event, YCWA would readily satisfy that standard. Removal or substantial modification of the Dams would impair YCWA's use of the Narrows 1 and 2 Powerplants, jeopardize its licenses, and disrupt the Brophy Diversion. ECF No. 16 at 3-6. This harm is concrete and imminent—not "conjectural" or "hypothetical" *Id.; see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[4]

For this reason, *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105 (N.D. Cal. 2007) is inapposite. There, the court denied intervention because the applicants failed to show a legally protectable interest. *Id*. at 1128. YCWA plainly has such an interest here. If

---

[2] Plaintiff's standing argument is largely academic, since an intervenor is not required to show Article III prior to an appeal. *See Diamond v. Charles*, 476 U.S. 54, 68 (1986).

[3] *Crossroads Grassroots Policy Strategies v. Federal Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) relied on by Plaintiff, has been abrogated, so does not support its argument. *Institutional Shareholder Services, Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (holding independent Article III standing not required for intervenors who sought the same relief as an existing party).

[4] Plaintiff's own standing is more tenuous. The Corps lacks discretion to remove the Dams and has consulted on its limited actions. Without causation or redressability, Article III is not satisfied. *Lujan*, 504 U.S. at 560–61.

6

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

Plaintiff were to succeed on its claims, YCWA's use of the Narrows 1 and 2 Powerplants, their licenses, and use of the Brophy Diversion would be adversely affected. ECF No. 16 at 4-5. It is therefore unsurprising that YCWA's motion to intervene as of right was granted without opposition. ECF No. 18.

## II.    The Corps lacks discretion on how it manages and maintains the Dams.

### A.    The Corps' management of the Dams is not a discretionary action.

The California Debris Commission, created in 1893 to regulate hydraulic mining and manage debris to restore navigability in Sacramento and San Joaquin River systems, held limited authority. *See* 33 U.S.C. § 661 et seq.; C:255:18706. When Congress abolished the Commission in the Water Resources Development Act of 1986 ("WRDA"), it did not expand that authority. *See* Pub. Law No. 99-662, § 1106, 100 Stat. 4082. The WRDA strictly limits the Corps' ability to make structural changes to Englebright and Daguerre Point Dams. It caps fish and wildlife spending at $7.5 million or 10% of project cost, whichever is greater, and it limits environmental enhancement projects to $15 million. 33 U.S.C. §§ 2283(b)(1), 2309a(d). These and other statutory constraints foreclose the major structural interventions Plaintiff demands.

Plaintiff continues to rely heavily on *San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation Dist.*, 49 F.4th 1242 (9th Cir. 2022), to argue that ESA Section 7 obligations attach unless Congress has clearly repealed the ESA by implication. But *Coastkeeper* did not announce a sweeping presumption in favor of consultation. The Ninth Circuit's holding turned on specific statutory language that conferred broad operational discretion to the dam operator—including authority to act for "other purposes" and to achieve statutory goals through "substantial compliance." *Id*. at 1246–47. That retained discretion was essential to the court's analysis.

Notably, this District recently rejected Plaintiff's expansive reading of *Coastkeeper* in *Center for Biological Diversity v. United States Bureau of Reclamation*, No. 1:16-cv-00307 JLT SKO, 2025 WL 1798970 (E.D. Cal. June 30, 2025) ("*CBD v. BOR*"), ignored by Plaintiff. There, plaintiffs advanced the same argument Plaintiff makes here—that *Coastkeeper*

7

requires Section 7 consultation unless Congress unmistakably repealed the ESA through express statutory language. Judge Thurston rejected that view, explaining that *Coastkeeper* was limited to the unique statutory framework at issue and did not override the ESA's own implementing regulations. *Id*. at *12–*13. Those regulations apply Section 7 only to "'actions in which there is discretionary Federal involvement or control.'" *Id*. at *10, 13 quoting, 50 C.F.R. § 402.03.

As *CBD v. BOR* clarifies, the question is not whether Congress repealed the ESA by implication—it is whether the agency retains discretion to take the actions Plaintiffs seek. Where that discretion is absent, no duty to consult exists. *CBD v. BOR*, 2025 WL 1798970, at *13. That holding directly applies here. The Corps' authority over Englebright and Daguerre Point Dams is tightly circumscribed by the WRDA and related statutes, which cap expenditures, limit structural modifications, and provide no discretion for the Corps to remove or significantly alter the Dams. *See* 33 U.S.C. §§ 2309a(d), 2330(d), 2283(b)(1). Because the Corps lacks the requisite discretion, no Section 7 duty is triggered—and no statutory conflict arises.

**B.    Continued existence of the Dams is not an ongoing Agency Action.**

Plaintiff's claim that the Dams' mere existence constitutes an ongoing federal agency action contradicts settled law. ECF No. 185 at 5-6. The Corps lacks discretion over the Dams' existence and therefore has no duty to consult. *See* 50 C.F.R. § 402.03; *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 647 (2007) ("An agency cannot be considered the legal 'cause' of an action that it has no statutory discretion not to take."). Plaintiff's theory would nullify *Home Builders* by treating every federal facility into a perpetual trigger for consultation, regardless of agency discretion. That reading would also render meaningless the ESA's limiting language, which confines consultation obligations to agency "actions" involving discretionary federal control. *See* 50 C.F.R. §§ 402.02, 402.03.

Plaintiff misreads *Pac. Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), which involved Forest Service plans the agency could revise. *Id*. at 1055–56. Here, the Corps cannot modify or decommission the Dams without new legislation. *See* C:81:4634;

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

C:532:42328. Plaintiff also mispresents *Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) ("*TVA*") by omitting the footnote that limits its holding to projects that "remain to be authorized, funded, or carried out." *TVA*, 437 U.S. at 186 & n.32. Finally, *Doe v. United States (In re Doe)*, 58 F.3d 494, 498 (9th Cir. 1995) has no relevance. It addressed the government's treatment as a "governmental unit" under the Bankruptcy Code, not ESA consultation or infrastructure authority. *Id.*

> **C.  YCWA did not waive the argument that the existence of the Dams does not constitute an agency action.**

In its motion to strike YCWA's Cross-Motion for Summary Judgment, Plaintiff faulted YCWA for not presenting distinct arguments, accusing it of violating the Court's orders. ECF No. 176-1. Yet now, Plaintiff argues that YCWA waived its position on "agency action" by not separately asserting that the Dam's continued existence does not constitute agency action. ECF No. 185 at 6-7. But both YCWA and Federal Defendants clearly argued that the Corps lacks discretion over the Dams' continued existence and therefore has no duty to consult. ECF No. 175 at 34-35; ECF No. 172-1 at 12-13. YCWA joined the Federal Defendants on that point to avoid duplicative briefing, in compliance with the Court's orders. ECF No. 18; ECF No. 157; ECF No. 175 at 21-22. Plaintiff cannot now penalize YCWA for following those instructions. This issue was squarely preserved.

**III.  The 2013 Englebright BA and LOC were not arbitrary and capricious.**

Plaintiff contends that the 2013 Englebright BA is arbitrary, capricious, and contrary to law as it "unlawfully defines the Corps' Yuba River Action" and improperly "segments" the action for consultation. ECF No. 185 at 10. That claim fails for multiple reasons. First, the 2013 BA as it is not a "final agency action" subject to review under the APA. *See* 5 U.S.C. § 704. Second, Plaintiff conflates *factual interdependence* with *legal responsibility*, leading to its incorrect assertion that YCWA's has waived any challenge by not independently refuting this claim. *See* ECF No. 175 at 27-33; ECF No. 185 at 10. But this issue was fully addressed by Federal Defendants, and under the Court's orders limiting duplication, YCWA had no need to restate the argument. ECF No. 18; ECF No. 157; ECF No. 172-1 at 10 n.9.

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

## IV.    The 2013 BA properly treated the gravel and LWM augmentation programs as part of the environmental baseline.

Plaintiff incorrectly asserts that the 2013 Englebright BA arbitrarily excluded the gravel and large woody material ("LWM") augmentation programs and that YCWA's defense of their inclusion is a "post hoc rationalization." ECF No. 185 at 11. In fact, YCWA cited the 2021 Englebright Dam Technical Memorandum, which explicitly includes these programs as part of the environmental baseline. N_ENG:601, 620-622. That discussion appears in Section 6.0 of the Memorandum, titled "Updates to the Environmental Baseline," *id.*, and identifies the Corps' ongoing activities at Daguerre—including the gravel and LWM augmentation—as part of the baseline for Englebright. N_ENG:616.

Plaintiff's reliance on *Pac. Coast Fed'n of Fishermen's Ass'n v. Bureau of Reclamation*, 226 Fed. Appx 715, 717 (9th Cir. 2007), is misplaced. That case involved a "post-determination analysis" defending a final agency decision—a biological opinion. *Id*. at 717. The 2013 BA is not a final agency action and is not subject to the same constraints. *See* ECF No. 172-1 at 10 n.9.

Plaintiff's allegations of budgetary "sleight-of-hand" regarding the Corps' operation and maintenance ("O&M") funding are similarly unfounded. ECF No. 185 at 11 & n.7. Both the 2013 and 2014 Englebright O&M Justification Sheets explicitly state that "[f]unding will minimally support gravel and woody debris augmentation conducted as a result of Section 7 consultation." *Compare* C:920:52048, *with* Linn Reply Decl., Ex. 4. Plaintiff's suggestion that the Corps shifted these programs to Daguerre's budget lacks support. The 2013 Daguerre Justification Sheet notes only that the District was involved in ongoing litigation and awaiting new requirements expected from the forthcoming 2014 BiOp. C:880:51523. It did request augmentation funding, but the necessary scope and amounts were not yet determined. *Id*. There is no evidence of manipulation—only a good-faith reflection of the evolving regulatory landscape.

## V.    The Dams and related facilities do not constitute a single Agency Action.

Plaintiff mischaracterizes the record in arguing that the Corps' activities in the lower

10

Yuba River constitute a "single, cohesive" action. ECF No. 185 at 12. In reality, the Narrows 1 and 2 Powerhouses are operated by YCWA under Federal Energy Regulatory Commission ("FERC") licenses; the Corps has no authority to modify those operations. C:28:496-99; C:81:4077; C:507:39449; C:515:40600. Nor has the Corps taken any affirmative action regarding the Brophy Diversion for decades—and it had no plans to do so when the BA was completed. C:81:4100; *see* C_DPD:506.

While the Corps did consult with NMFS over past modifications to Cordua's licenses, those consultations addressed discrete, discretionary actions. C_DPD:477; C_DPD:523-24; N_DPD:945–46. The Cordua Diversion itself operates under a perpetual license issued by the Secretary of War in 1911 and requires no further Corps involvement. C:6:168.

Plaintiff dismisses *Sierra Club v. Bureau of Land Mgmt*., 786 F.3d 1219 (9th Cir. 2015), without explanation. That case confirms that relevant test is not factual interdependence, but whether a federal agency has discretion over the activity. *Id.* at 1225; 50 C.F.R. § 402.02. The Corps' role is limited to the Dams' O&M, including maintenance, safety, and security. Water is released through the Narrows 1 and 2 Powerhouses, then flows through the downstream diversions. *See* ECF No. 185 at 13; C:174:13157; C186:13897-98; C389:29465-66, 29481. Even if the Corps ceased O&M of the Dams, those facilities would continue to function. *See* C:81:4072; C:550:43451. The Corps' actions are not the "but for" cause of the Powerhouses, their licenses, or the Diversions, and thus do not form part of a single federal action. *Sierra Club*, 786 F.3d at 1225; 50 C.F.R. § 402.02.

**VI.     The Corps has not made any affirmative, discretionary decisions about the Facilities' licenses.**

Plaintiff argues that YCWA is wrong to assert FERC's exclusive licensing authority over hydropower facilities, but offers no authority that undermines *California ex re. State Water Resources Control Bd. v. F.E.R.C.*, 966 F.2d 1541 (9th Cir. 1992) ("*California v. FERC*"). That case confirms that FERC alone governs federal hydropower development under the Federal Power Act. *Id*. at 1556. Plaintiff cites historical agreements and California Debris Commission / / /

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

legislation, none of which confer current licensing authority on the Corps. *See* 16 U.S.C. §§ 791-825r; *California v. FERC*, 966 F.2d at 1554–56.[5]

Plaintiff's "*ultra vires*" theory fares no better. That the Corps entered into an unnecessary agreement with PG&E in 1994 does not mean it has current licensing authority or must act again. Likewise, Plaintiff's assertion that the Narrows 2 license lapsed is baseless.[6] ECF No. 185 at 15. As YCWA explained, FERC has been issuing annual licenses during the pendency of long-term FERC relicensing. ECF No. 185 at 13; C_ENG:64-67. These licenses allow continued operation on federal land without Corps discretionary action. *See* C_ENG:67. The Corps has no role in this process and has taken no discretionary action regarding Narrows 2. YCWA made this point clearly its Cross-Motion for Summary Judgment. ECF No. 175 at 13, 29-30.

Finally, Plaintiff claims YCWA failed to rebut its assertion that the Corps recently made discretionary decisions about the Brophy Diversion. But past action does not obligate future ones. As YCWA stated, it will consult if and when future actions involving federal approval arise. ECF No. 175 at 30.

## VII.   The Corps is not liable under ESA Section 9.

Plaintiff's Section 9 claim fails for the same reason as its Section 7 claims: the Corps lacks discretion to implement the measures Plaintiff demands. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756, 770 (2004). Plaintiff offers a list of hypothetical mitigation actions, such as augmenting gravel and LWM to the lower Yuba River, but the Corps' discretion to conduct that program lies with Daguerre, not Englebright. N_ENG:601, 620-622; N_DPD:746; N_DPD:950–952.

---

[5] Plaintiff also misrepresents Federal Defendants position. In fact, Federal Defendants deny that the Corps manages the Narrows 1 Powerplant and affirm that FERC governs its operation. *See* ECF No. 172-3 at 8-9, ¶¶ 23-27.

[6] Plaintiff uses a draft memorandum of agreement between YCWA and the Corps to make this argument. However, a comment bubble of this draft agreement questions whether a Corps easement is even required "for the continued operation and maintenance" of Narrows 2. Linn Reply Decl., Ex. 2, at 3. As an easement is not required, no finalized agreement needed to be executed.

12

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

Plaintiff also points to modifications to the fish ladders at Daguerre. But those ladders were installed by the California Department of Fish and Game and rebuilt by the Debris Commission in 1965—before the Corps assumed maintenance responsibilities. N_DPD:215-218. The Corps has not substantially altered the ladders in over 60 years and lacks discretion to do so. N_DPD:217-18, 221-224.

Plaintiff's remaining arguments repackage its Section 7 theory, asserting Corps liability for alleged take at the Narrows 1 and 2 Powerhouses and the Cordua Diversion. But the Corps does not control the powerhouses: FERC does. *California v. FERC*, 966 F.2d 1541, 1556 (9th Cir. 1992); ECF No. 172-1 at 28–29. The Corps cannot be liable for actions it lacks the power to modify. *See Dep't of Transp.*, 541 U.S. at 770; *Nat. Res. Def. Council v. Norton*, 236 F. Supp. 3d 1198, 1238–39 (E.D. Cal. 2017). Nor does Plaintiff identify any authorized take linked to a discretionary Corps action for Cordua Diversion. To the contrary, the Corps has already consulted with NMFS regarding its discretionary modifications of the Cordua Diversion license and received an incidental take permit in the 2024 BiOp. C_DPD:913, 930-932, 945-946; C_DPD:960. Any future discretionary changes would trigger further consultation. In short, Plaintiff offers no discretionary agency action that would support Section 9 liability.

**VIII.  YCWA accurately characterize the 2012 BiOp.**

Plaintiff accuses YCWA of making "false and misleading" statements about the 2012 BiOp, arguing that NMFS is entitled to deference. ECF No. 185 at 19. But the Court has already rejected that premise. In *SYRCL IV*, the Court stayed the case and expressly prohibited NMFS from citing or relying on the 2012 BiOp or its RPA in any future consultation. The Court also barred NMFS from using the 2012 BiOp to establish the environmental baseline in FERC relicensing proceedings. *Id*.

No other biological opinion—before or after—has concluded that the mere existence of the Dams constitutes ongoing federal action. *See SYRCL IV*, WL 4094777, at *2; C_ENG:29; C_DPD:474-79; N_DPD:8-837; N_DPD:931-1091. The 2012 BiOp stands alone and has been disavowed. Plaintiff's suggestion that it reflects NMFS's true position ignores the judicial

13

record and implies that all other biological opinions were the product of improper influence, an argument Plaintiff does not and cannot support.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion and grant summary judgment to YCWA and Federal Defendants.

Dated: August 4, 2025                                   Respectfully submitted,


By:        /s/ *Howard F. Wilkins III*
           Howard F. Wilkins III, SBN 203083
           Remy Moose Manley, LLP
           555 Capitol Mall, Suite 800
           Sacramento, CA 95814
           Telephone: (916) 443-2745
           Facsimile: (916) 443-9017
           Email: cwilkins@rmmenvirolaw.com

           Attorneys for Defendant-Intervenor
           Yuba County Water Agency

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system on this 4th day of August 2025.

All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Kathryn A. Ramirez*
KATHRYN A. RAMIREZ

DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-CV-00818-DJC-JDP